DU PAGE COUNTY BOARD OF REVIEW *et al.*, Plaintiffs-Appellees, v. JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS *et al.*, Defendants-Appellants.

Second District   No. 2—94—0770

Opinion filed August 8, 1995.

Melvin L. Katten and Donna M. Lach, both of Katten, Muchin & Zavis, and Francis X. Grossi, Jr., of Bates, Meckler, Bulger & Tilson, both of Chicago, for appellant Joint Commission on Accreditation of Healthcare Organizations.

Constance Beard, of Springfield, for appellant Department of Revenue.

Anthony M. Peccarelli, State's Attorney, of Wheaton (Robert G. Rybica, Assistant State's Attorney, of counsel), for appellee Du Page County Board of Review.

Elinor P. Swiger and Everett E. Nicholas, Jr., both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee Villa Park School District No. 45.

Thaddeus J. Nodzenski and Mark D. Deaton, both of Illinois Hospital Association, of Naperville, and Robert H. Abney, of Metropolitan Chicago Healthcare Council, of Chicago, for amicus curiae.

JUSTICE GEIGER delivered the opinion of the court:

This is an appeal from a judgment in the circuit court of Du Page County, holding that the defendant, the Joint Commission on Accreditation of Healthcare Organizations (the Joint Commission), was not entitled to a charitable and educational tax exemption under section 19.7 of the Revenue Act of 1939 (35 ILCS 205/19.7 (West 1992)) (the Act) for its land and an office building thereon. On appeal, the Joint Commission argues that the circuit court applied an incorrect legal standard to the facts. Specifically, the Joint Commission argues: (1) that the circuit court erred in ignoring the relevant substantive identity between the Joint Commission and the American College of Surgeons (the American College), which our supreme court found entitled to a charitable tax exemption in *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 349, *overruled on other grounds in Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 57; (2) that the circuit court erred in holding that *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 156-57, creates an inflexible six-part standard, which requires a charity to meet every element in its entirety regardless of the particular circumstances; and (3) that the circuit court misapplied the existing law to the Joint Commission's facts in holding that the Joint Commission met none of the *Methodist Old Peoples Home* guidelines. We affirm.

The Joint Commission was incorporated in 1951 as an Illinois not-for-profit corporation. The members of the Joint Commission are the American College of Physicians, the American College of Surgeons, the American Dental Association, the American Hospital Association, and the American Medical Association, which are all not-for-profit organizations. The Joint Commission's articles of incorporation and bylaws explain that its very existence is founded

solely and exclusively for the purpose of providing charitable and educational services, and not for any profit-making ventures.

The Joint Commission's primary and most complex functions are to develop standards of accreditation for health care organizations, to perform on-site evaluations of those organizations, to make the decision whether to issue those organizations a certificate of accreditation, and to make recommendations for improvement in standards compliance. The Joint Commission is continually doing research for the purpose of refining those standards for evaluation in order "to maintain and improve the quality of care through providing a clear focus on the elements that are essential to the provision of high-quality care."

To further accomplish its goal of high-quality health care, the Joint Commission conducts exhaustive surveys of health care programs throughout the country. Teams of specialized and expert medical professionals perform on-site inspections of health care organizations and meet with each organization's representatives to determine whether the particular facility conforms to established standards. The survey team also affords consumers and the general public an opportunity to comment or complain about any facility undergoing a survey and inspection.

After the survey team has discussed its preliminary findings with the organization's administrators and staff, it sends a recommendation as to whether the organization should be accredited to the Joint Commission's Oakbrook Terrace headquarters, where the recommendation is analyzed. The Joint Commission then makes a report to the organization with a series of recommendations regarding the steps the organization may take to improve patient care. The process does not end with the decision whether to issue a certificate of accreditation. Rather, the Joint Commission continually follows up on whether its recommendations are implemented.

In addition, the Joint Commission provides educational services by offering national symposia, teleconferences, seminars, workshops, and custom-designed programs in order to "enhance health care professionals' understanding of accreditation and quality of care issues." These educational programs are led by a variety of health-care professionals. The Joint Commission also answers questions and provides information about health care issues free of charge to any citizen who calls, publishes a wide variety of written materials in an effort to educate providers and thereby improve health care, and offers on-site technical assistance so that health care organizations may improve the effectiveness of their quality assurance and risk management activities.

In April 1990, the Joint Commission occupied its newly constructed office and conference building located in Oakbrook Terrace, Illinois, which was financed by tax-exempt bonds. Since its construction, the building has been occupied solely by the Joint Commission.

On December 20, 1990, the Joint Commission applied for a charitable and educational tax exemption pursuant to section 19.7 of the Act (35 ILCS 205/19.7 (West 1992)). On January 31, 1990, the Du Page County Board of Review (the Board), one of the plaintiffs, recommended that the application be denied. However, on May 8, 1991, the Department of Revenue reversed the Board's decision and approved the exemption. The Board and the Villa Park School District No. 45 (the School District) requested a formal hearing on the matter.

On October 26, 1992, the hearing was held before an administrative law judge of the Illinois Department of Revenue (the ALJ). On May 14, 1993, the ALJ rendered a decision, recommending an exemption. The ALJ specifically found that the Joint Commission "was organized to establish standards for hospitals and other health-related facilities and to conduct surveys, and where appropriate, accredit such facilities. [The Joint Commission] also provided training for administrators and employees of said facilities, and on-site technical assistance to said facilities upon request during 1990." In reaching his recommendation, the ALJ concluded that, because the Joint Commission's work both provides a service that benefits the public as a whole and reduces the burden of government, not all of the guidelines in *Methodist Old Peoples Home* (39 Ill. 2d at 156-57) were relevant to the Joint Commission's case. The Board and the School District appealed the ALJ's decision to the circuit court.

On June 3, 1994, the circuit court reversed the ALJ's decision, holding that the ALJ misapplied the relevant law. The circuit court based its holding on its interpretation that our supreme court in *Methodist Old Peoples Home* (39 Ill. 2d at 156-57) imposed on all charitable institutions a six-part test, which, under the circuit court's application of the law to the Joint Commission's facts, the Joint Commission failed to meet.

On June 29, 1994, the Joint Commission filed a timely notice of appeal and on July 1, 1994, a timely amended notice of appeal. On appeal, the Joint Commission argues that the circuit court applied an incorrect legal standard to the facts. Specifically, the Joint Commission argues: (1) that the circuit court erred in ignoring the relevant substantive identity between the Joint Commission and the American College, which our supreme court found entitled to a charitable tax exemption in *American College* (36 Ill. 2d at 349); (2)

that the circuit court erred in holding that *Methodist Old Peoples Home* (39 Ill. 2d at 156-57) creates an inflexible six-part standard, which requires a charity to meet every element in its entirety regardless of the particular circumstances; and (3) that the circuit court misapplied the existing law to the Joint Commission's facts in holding that the Joint Commission met none of the *Methodist Old Peoples Home* guidelines.

■ The Illinois Constitution empowers the General Assembly to exempt from taxation certain "property used exclusively for *** school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, § 6.) In accordance with this provision, the legislature has provided a tax exemption for charitable organizations in section 19.7 of the Act by exempting "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (35 ILCS 205/19.7 (West 1992).) Whether an institution has been organized and is operating exclusively for a purpose exempt from real estate tax is to be determined from its charter and bylaws and the actual facts relating to its method of operation. *Du Page Art League v. Department of Revenue* (1988), 177 Ill. App. 3d 895, 899.

■ In *Methodist Old Peoples Home* (39 Ill. 2d at 156-57), our supreme court stated:

> "The concept of property use which is exclusively charitable does not lend itself to easy definition. Therefore each individual claim for tax exemption must be determined from the facts presented. [Citations.] However, though past decisions of this court provide no precise formula for resolving questions of purported charitable use, they do furnish guidelines and criteria which should be generally applied.
>
> It has been stated that a charity is a gift to be applied *** for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government [citation]; that the distinctive characteristics of a charitable institution are that it has no capital, capital stock or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and *holds them in trust for the objects and purposes expressed in its charter*, [citations]; that a charitable and beneficent institution is one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it

dispenses, [citation]; that the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used, [citations]; and that the term 'exclusively used' means the primary purpose for which property is used and not any secondary or incidental purpose. These principles constitute the frame of reference to which we must apply plaintiff's use of its property to arrive at a determination of whether or not such use is in fact exclusively for charitable purposes." 39 Ill. 2d at 156-57.

In the present case, the ALJ determined that the Joint Commission qualified as an organization devoted exclusively to charitable purposes within the meaning of section 19.7 of the Act. Thus, the ALJ determined that the Joint Commission was entitled to a real estate tax exemption pursuant to section 19.7 of the Act.

By statute, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (735 ILCS 5/3—110 (West 1994).) However, where, as here, the facts are not in dispute, a determination whether an exemption exists is a question of law. (*City of Chicago v. Illinois Department of Revenue* (1992), 147 Ill. 2d 484, 491.) Thus, the decision as to whether property is exempt depends solely upon the application of the appropriate legal standard to the undisputed facts. (*City of Chicago*, 147 Ill. 2d at 491.) Each claim must be determined from the facts presented. *City of Chicago*, 147 Ill. 2d at 491.

Statutes exempting property from taxation are to be strictly construed in favor of taxation. (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331.) Moreover, in determining whether property is included within the scope of a tax exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. (*City of Chicago*, 147 Ill. 2d at 491-92.) In addition, the taxpayer seeking the exemption bears the burden of proving by clear and convincing evidence that the exemption applies. *Evangelical Hospitals Corp. v. Department of Revenue* (1991), 223 Ill. App. 3d 225, 231.

One year before deciding *Methodist Old Peoples Home*, our supreme court held that the American College was entitled to a charitable real estate tax exemption under the Act. *American College*, 36 Ill. 2d at 348-49.

In the present case, the ALJ compared the work of the Joint Commission to the work of the American College in concluding that the Joint Commission was also entitled to a charitable real estate tax

exemption. Historically, the American College performed the function of accrediting health care institutions. As accreditation became a widely accepted means of maintaining and improving the quality of health care, the American College found it impossible to continue to perform this task alone. Thus, the Joint Commission was established by the American College, one of its founding members, to take over those accreditation activities.

The circuit court disagreed with the ALJ's emphasis on the comparison between the Joint Commission and the American College. The circuit court stated:

"The plaintiff in [American College] had conducted accreditation surveys of hospitals, but had transferred the program to the [Joint Commission] some 14 years prior to the Supreme Court decision. The Court's holding in that case was based on the existence of numerous other factors, including a library and museum, which are not present in the case now before this court."

In *American College*, the court placed considerable emphasis on the range of free services offered to the public by the American College, including: (1) a library and museum which are open to, and used by, the general public; (2) a library of 325 different surgical films which are available to hospitals and meetings of nurses, medical and para-medical groups at a maximum service charge of $6 to cover postage and insurance; (3) a manual which covers the management of a cancer patient in the hospital; and (4) pamphlets and handbooks dealing with treatment of injuries, many of which are available without charge to anyone who may wish to obtain them. *American College*, 36 Ill. 2d at 344-45.

As the record in the present case contains no evidence of any comparable public services offered by the Joint Commission, the circuit court properly concluded that the holding in American College was based on the existence of "numerous other factors" not present in the present case. Thus, as the holding in American College was based on the existence of "numerous other factors" not present in the present case, the circuit court properly determined that it is not dispositive in the present case.

In reversing the ALJ's decision in the present case, the circuit court construed *Methodist Old Peoples Home* as creating a six-part test which must be applied to all factual situations before an institution can be eligible for a charitable exemption. A review of *Methodist Old Peoples Home*, together with the Illinois case law that interprets it, confirms that our supreme court did not intend to have these factors used as requirements for assessing an institution's charitable status. Instead, these factors were to be used as guidelines for such an assessment. See *Methodist Old Peoples Home*, 39 Ill. 2d at 156.

Subsequent to *Methodist Old Peoples Home*, Illinois courts have not applied a rigid formula to all factual scenarios in determining eligibility for a charitable real estate tax exemption. (See, *e.g.*, *Lutheran General Health Care System v. Department of Revenue* (1992), 231 Ill. App. 3d 652, 661-64; *Evangelical Hospitals*, 223 Ill. App. 3d at 229-30; *Highland Park Women's Club v. Department of Revenue* (1990), 206 Ill. App. 3d 447, 463-65; *American College of Chest Physicians v. Department of Revenue* (1990), 202 Ill. App. 3d 59, 66-69.) Rather, courts consider and balance the guidelines by examining the facts of each case and focusing on whether and how the institution serves the public interest and lessens the State burden. See, *e.g.*, *Lutheran General*, 231 Ill. App. 3d at 662-64 (where the court found that, even though the foundation's primary source of funding was not derived from public or private charity and it had capital, capital stock, and shareholders, it was still entitled to a charitable exemption); *Resurrection Lutheran Church v. Department of Revenue* (1991), 212 Ill. App. 3d 964, 971-73 (where the fact that services were not provided free did not destroy the church's charitable exemption); *Decatur Sports Foundation v. Department of Revenue* (1988), 177 Ill. App. 3d 696, 711 (where the organization was still entitled to a charitable exemption even though the organization charged user fees and had income from concessions).

The circuit court found that the Joint Commission meets none of the *Methodist Old Peoples Home* guidelines. The circuit court found that the Joint Commission does not meet the first of the *Methodist Old Peoples Home* guidelines, which is whether the use of the property is for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government. *Methodist Old Peoples Home*, 39 Ill. 2d at 156-57.

In concluding that the Joint Commission's work directly benefitted an indefinite number of persons, the ALJ observed that "[the Joint Commission] is not providing direct care and services to persons, but rather is providing a benefit to the public as a whole by surveying and accrediting health care institutions, which do provide direct care and assisting those institutions to improve their level of care."

The circuit court disagreed, stating that the Joint Commission's work only provides an indirect benefit to an indefinite number of persons. The circuit court found that the direct beneficiaries of the Joint Commission's work are "the health care providers who, when accredited by the [Joint Commission], are able to receive reimbursement from both private and public sources of funding (*i.e.*, private insurance and [M]edicare or [M]edicaid)." We agree with the circuit court in this regard.

The circuit court agreed with the ALJ that the Joint Commission's work lessens the burdens of government. However, because the direct beneficiaries of the Joint Commission's work are the health care organizations which are accredited, and not an indefinite number of persons (see *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542), we agree with the circuit court that the Joint Commission does not satisfy the first of the *Methodist Old Peoples Home* guidelines.

The second *Methodist Old Peoples Home* guideline is that the charitable institution has no capital, capital stock, or shareholders and that it earns no profits or dividends. (*Methodist Old Peoples Home,* 39 Ill. 2d at 157.) As the circuit court correctly noted, the Joint Commission has no capital, capital stock, or shareholders. Moreover, it is undisputed that the Joint Commission is a not-for-profit corporation that pays no dividends and whose bylaws provide that upon dissolution none of its assets will be distributed to any individual or member.

The circuit court's conclusion that the Joint Commission fails to meet the second guideline is based on the following dictionary definition of "profit": "the sum remaining after all costs, direct and indirect, are deducted from the income of a business." Employing this dictionary definition of "profit," the circuit court reasoned that, although "the financial practices of the [Joint Commission] are desirable from a business standpoint," the Joint Commission's surplus of income of $203,075 in 1988, together with its accumulated surplus over the years in the fund balance, created a "profit."

The circuit court's reliance on a dictionary definition of "profit" contradicts our supreme court case law interpreting "profit" as it relates to a not-for-profit corporation. Our supreme court has noted that the determining feature of "profit" with respect to a charitable institution is whether there is inurement of benefit to a private individual. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 452-53.) This court has interpreted "profit" in regard to eligibility for a real estate tax exemption as a benefit inuring to members that is not available to nonmembers. See *Du Page Art League,* 177 Ill. App. 3d at 901 (the plaintiff's members impermissibly profited from the organization because only members were allowed to show and sell their art work in the organization's galleries, giving "a distinct advantage not afforded to nonmembers").

In the present case, the circuit court erroneously believed that at some point a fund balance ceases to be a fund balance and becomes a "profit." In other words, institutions worthy of tax exemption should have minimal or nonexistent fund balances. Conditioning tax exemp-

tions on high-risk money management fails to serve the interests of charitable organizations and their beneficiaries.

Here, the record demonstrates that the Joint Commission, whose funds do not inure to the benefit of any individual or member, does not earn a "profit." The circuit court's determination that the Joint Commission makes a "profit" because it maintains a fund balance is erroneous.

The circuit court found, and we agree, that the Joint Commission did not meet the third of the *Methodist Old Peoples Home* guidelines, which is that funds are derived mainly from public and private charity and held in trust for the objects and purposes expressed in its charter (39 Ill. 2d at 157). The primary source of funds for the Joint Commission is from fees received for surveys, publications, and educational programs.

In *Small v. Pangle* (1975), 60 Ill. 2d 510, our supreme court stated:
> "[T]he fact that an institution makes charges does not necessarily remove it from the classification of a charitable institution. Those who charge fees, yet admit persons who need and seek the benefits offered but are unable to pay the customary fees, do not lose their charitable character." (60 Ill. 2d at 518.)

In the present case, however, the Joint Commission does not render its accreditation services to a hospital which is unable to pay the customary fees.

The ALJ determined that because the work of the Joint Commission provides a benefit to the public as a whole rather than to particular individuals, not all of the guidelines in *Methodist Old Peoples Home* are relevant to the present case. In particular, the ALJ found guidelines four and five not relevant. Guideline four is that the organization dispenses charity to all who need and apply for it. (*Methodist Old Peoples Home*, 39 Ill. 2d at 157.) Guideline five is that the charitable organization does not appear to place obstacles in the way of those seeking benefits. *Methodist Old Peoples Home*, 39 Ill. 2d at 157.

The circuit court disagreed with the ALJ, finding that guidelines four and five are relevant. The circuit court found, and we agree, that the Joint Commission failed to meet guidelines four and five in that "no person or organization is afforded the benefit of the [Joint Commission's] services despite an inability to pay."

The ALJ found that the Joint Commission meets the sixth *Methodist Old Peoples Home* guideline, which is that the charitable use of the property is the primary, and not the secondary or incidental, use. (39 Ill. 2d at 157.) The circuit court found, and we agree, that "the charitable use of the property is incidental to the primary benefits

received by health care providers." The Joint Commission's property is used exclusively as the administrative offices for its work. However, fees are charged for each service supplied, and the record contains no evidence that provisions are ever made for waiver or reduction of the fees for any recipient under any circumstances. Thus, the primary use of the property is not a charitable use. Instead, the property is primarily used to benefit health care providers for a fee.

After a careful consideration of the facts of the present case in light of all of the *Methodist Old Peoples Home* guidelines (see 39 Ill. 2d at 156-57), we conclude that the record supports the circuit court's decision that the Joint Commission has not met its burden of demonstrating by clear and convincing evidence (see *Evangelical Hospitals*, 223 Ill. App. 3d at 231) that the use of the property and the functions it performs qualify it for a charitable tax exemption.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.