DU PAGE ART LEAGUE, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

Second District    Nos. 2—88—0185, 2—88—0208 cons.

Opinion filed December 30, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant Department of Revenue.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellant John L. Novak.

John B. Kincaid, of Mirabella & Kincaid, of Wheaton, for appellee.

JUSTICE NASH delivered the opinion of the court:

In this consolidated appeal, defendants, the county collector of Du Page County and the Illinois Department of Revenue, appeal from a judgment exempting property owned by plaintiff, the Du Page Art League, from real estate taxes for 1983, contending that plaintiff does not meet the test set forth in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, so as to qualify it as a charitable organization.

On May 10, 1978, the circuit court of Du Page County found that two adjacent parcels of land owned by plaintiff were exempt from real estate taxes on the ground plaintiff was a charitable organization within the meaning of section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 500.7). The trial court ordered the county collector to refund 1975 real estate taxes paid by plaintiff and enjoined him from collecting taxes for 1976 and subsequent tax years. That decision was not appealed. In 1982, plaintiff combined the two parcels of land under one legal description and a new permanent index number was assigned. Thereafter, real estate taxes were

assessed against the property for the tax year 1983, which the owner paid under protest. The Du Page County Board of Review recommended to the Illinois Department of Revenue that plaintiff's exemption request be granted based on the prior judicial determination made in 1978 that the property was exempt from tax. The Director of the Department of Revenue denied the exemption request; however, on administrative review, the circuit court found, as a matter of law, that plaintiff was a charitable organization and its property was exempt from real estate taxes. This appeal followed.

The record discloses that the Du Page Art League was incorporated in 1959 as a not-for-profit corporation to "promote art consciousness and provide [a] meeting place for painting sessions and kindred arts." Its bylaws state that the "object of the League is to encourage those interested in all forms of creative art; to promote high artistic standards and to stimulate interest and understanding of art in Du Page county through art instruction, education, art awareness, dissemination of information, programs and exhibits." At the end of 1983, plaintiff had 513 members who volunteered over 4,800 hours to staff the art building. The bylaws set forth membership requirements that active members must be at least 17 years old, reside in Du Page County, and have paid the annual dues fixed by plaintiff's board, which are payable September 1 of each year and are considered delinquent if not paid by October 1. In 1983, membership dues were $20 per year for an individual and $30 for a couple. Sustaining members pay annual amounts stipulated by the board to give support to plaintiff and a regular life membership can be obtained by donating to plaintiff a significant amount of money to be determined by the board. The bylaws do provide that membership applications requiring "special consideration" must be acted upon by the board and that the board can confer honorary life memberships, but no definitions or guidelines are contained therein. Kathy Young, plaintiff's president, testified that honorary memberships are available for hardship cases, and that plaintiff did have one hardship member. Neither plaintiff's bylaws nor its 1984-85 activity schedule indicates that membership fees would be waived if an inability to pay was shown.

Plaintiff's real estate for which it sought an exemption contains a one-story building in which there is a classroom for teaching art classes, two display galleries, a small gift area, an office area, and a parking lot. All parking spaces are reserved for gallery staff volunteers, teachers, officers of plaintiff and sustaining members of the organization. The galleries are open to the public without charge, and

are used, with minor exceptions, to display the art work of its members and students. Only members whose dues are paid can exhibit their work in the galleries and all of their work in the gallery must be marked for sale. The artist determines the sales price of his work and, if it is sold, the gallery receives 20% of the sales price as a commission and the artist retains the balance, which was $33,431 and $33,582 for fiscal years ended April 30, 1983, and April 30, 1984, respectively.

Plaintiff conducts art classes for adults and children, and its program has expanded to meet the demands caused by a decrease in art classes in the school system. Plaintiff's brochure stated that a scholarship would be awarded in each of the three children's classes in the fall of 1984, and plaintiff also offers annually two $200 and one $300 scholarship to colleges based on the students' ability. When asked whether any scholarships were awarded based on need during 1983, plaintiff's president stated that she did not know. Plaintiff charges tuition for all other classes, and its 1984-85 activity schedule states that "[r]egistration *MUST BE* accompanied by full payment." The registration form states that full payment is due at the time of registration. Neither brochure suggests that tuition will be waived in the case of an inability to pay. Nonmembers can register in art classes but there is a $5 surcharge. Senior citizens are offered a 10% discount on classes and regular gallery workers and class monitors can take art classes at half of the regular fee. The art instructors receive 80% of the tuition paid and plaintiff receives the balance.

Plaintiff also conducts school demonstrations where three artists would work at a school and students would come in by class and observe them in operation. Occasionally, plaintiff sponsors an "artists in action" program where students come to see artists at work in plaintiff's building.

Plaintiff sponsors programs open to the public at no charge which include demonstrations, critiques, educational films and lectures which are held on six days each year on the third Monday of February, March, April, September, October, and November. It also arranges to have its members display their art work in over 40 locations, including city and county offices, banks, professional buildings, libraries, park district buildings, hospitals, and savings and loan associations. The organization's 1984-85 activity schedule states that "[s]pecial services is a personal shopping service for DPAL customers in order to increase sales by making use of the vast and varied talents of our artists. *** Viewings are arranged for representatives of clubs, banks, and corporations for *purchase* for their personal collection."

Plaintiff had net income of $3,680 for its fiscal year ended April 30, 1983, and incurred a $392 net loss for its fiscal year ended April 30, 1984. Donations accounted for 11.5% and 1.8% of plaintiff's gross income for 1983 and 1984, respectively; membership fees, tuition, commissions from the sale of art work, and interest income accounted for the remaining gross income. While plaintiff is exempt from Federal income tax on the ground that it is organized exclusively for educational purposes, plaintiff does report, as shown in its 1983 tax return, the commissions it receives from the sale of art work as unrelated business income subject to tax.

In the event plaintiff is dissolved, its bylaws provide that assets remaining after the payment of legal obligations are to be distributed to an organization which operates exclusively for charitable or educational purposes and that qualifies as an exempt organization under section 501(c)(3) of the Internal Revenue Code (26 U.S.C.A. §501(c)(3) (West 1974)).

■■ Tax exemption statutes are to be strictly construed in favor of taxation, and a party claiming an exemption has the burden to prove clearly and conclusively that the exemption applies. (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310, 347 N.E.2d 729; *Fox Valley Airport Authority v. Department of Revenue* (1987), 164 Ill. App. 3d 415, 418, 517 N.E.2d 1200.) Section 19.7 of the Revenue Act of 1939 exempts "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) Whether a party has been organized and is operating exclusively for a purpose exempt from real estate tax is to be determined from its charter and bylaws and the actual facts relating to its method of operation. (*Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 349, 111 N.E.2d 519; *Evangelical Teacher Training Association v. Novak* (1983), 118 Ill. App. 3d 21, 24, 454 N.E.2d 836.) Our supreme court has established a six-part test which must be met for an organization to be considered a charitable organization for purposes of tax exemption:

(1) the benefits derived must be for an indefinite number of persons;

(2) the organization has no capital, capital stock or shareholders, and does not earn profits or dividends;

(3) the organization derives its funds mainly from private and public charity, and the funds are held for the objects and purposes expressed in its charter;

(4)  charity is dispensed to all who need and apply for it;

(5) no obstacles appear to be placed in the way of those seeking its benefits;

(6) the exclusive, primary use of the property is for charitable purposes.

(*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537; *In re Application of Clark* (1980), 80 Ill. App. 3d 1010, 1013, 400 N.E.2d 661.) An art studio or art gallery established for the benefit of the public for the advancement of education in art can be a charity (*cf. Mason v. Bloomington Library Association* (1908), 237 Ill. 442, 449, 86 N.E. 1044 (the creation of a trust to establish for the benefit of the public an art studio or art gallery for the advancement of art education is a charitable trust)), and an art school which conducts an art program for art educators and advanced art students can be qualified as a charitable organization exempt from property taxes (*Cummington School of the Arts, Inc. v. Board of Assessors* (1977), 373 Mass. 597, 369 N.E.2d 457); however, we conclude that the Du Page Art League is not entitled to a property tax exemption as a charitable organization under the evidence in this case.

■ Charity is not dispensed by this organization to those who need it and there are obstacles preventing those who need charity from obtaining it. While plaintiff has 513 dues-paying members it only has one member who was not required to pay dues because of an inability to pay. Furthermore, nothing in plaintiff's bylaws requires it to waive membership dues or tuition because of an inability to pay. (See *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 159, 233 N.E.2d 537.) Plaintiff's president did testify that honorary memberships are available for hardship cases but the bylaws merely state that honorary life memberships can be conferred if voted on by the board, and circumstances warranting the award of an honorary life membership are not stated. Although scholarships are given based on the artistic ability of a student, the plaintiff's president was unable to point to any case where a scholarship was awarded due to a student's financial need. None of plaintiff's brochures informs the public that plaintiff's benefits are available without charge in a proper case. Plaintiff's membership application form sets forth the yearly dues payable but does not mention hardship cases, and its 1984-85 activity schedule informed the public that registration for art classes "*MUST BE* accompanied by full payment." We consider that plaintiff does not dispense charity to those who need it and apply for it and that obstacles do exist to obtaining the

benefits plaintiff offers. *Cf. Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 280-81, 507 N.E.2d 1331 (where medical center's advertisements do not disclose charitable nature of the facility and there is no evidence that the public or patients are made aware of the fact that free care may be available, property is not used for charitable purposes).

We also note that plaintiff's members impermissibly profit from plaintiff's operations. Members are permitted to show their work in the art galleries and they must then offer their work for sale. If the artist's work is sold, 80% of the sales proceeds are paid to the artist. No person connected to a charitable organization is permitted gain or profit in connection with the organization. (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537; *School of Domestic Arts & Science v. Carr* (1926), 322 Ill. 562, 569, 153 N.E. 669.) Furthermore, only plaintiff's active members are permitted to show their work in the gallery. Thus, its members gain a distinct advantage not afforded to nonmembers by the opportunity to sell, promote, and familiarize the community with their work.

It was also shown that almost all of plaintiff's support is from tuition, membership fees, and commissions from the sale of art created by its members. Where most of an organization's support is from tuition, its funds are not derived mainly from private and public charity. (*Milward v. Paschen* (1959), 16 Ill. 2d 302, 311, 157 N.E.2d 1; *cf. Turnverein "Lincoln" v. Board of Appeals* (1934), 358 Ill. 135, 145, 192 N.E. 780 (the use of property for athletic and social purposes by members who pay dues and by nonmembers that pay fees is not a dedication of the property to charitable purposes).) While the primary focus should be on the use to which the funds are put, the source of the funds is also a factor. (See *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 348, 224 N.E.2d 7, *overruled on other grounds sub nom. Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 57, 383 N.E.2d 958.) We note that plaintiff describes the commissions it receives from the sale of art work as donations, but that this characterization is directly contradicted by the informational return it is required to file with the Federal government as an exempt organization. That tax return does not report the commissions plaintiff earns as donations; instead, these commissions are reported on its tax return as unrelated trade or business gross income subject to tax.

While plaintiff does offer some programs to the public and, through its art gallery, the community may receive some benefits in the form of art appreciation and education, we conclude that these

benefits are secondary and that plaintiff's primary purpose is to benefit its members.

■ Plaintiff argues that amendatory language of section 19.7 of the Revenue Act of 1939 establishes its right to an exemption. That section provides an exemption for:

> "[A]ll property of not-for-profit organizations providing services or facilities related to the goals of educational *** development ***. All *** not-for-profit organizations providing services or facilities related to the goals of educational *** development shall qualify for the exemption stated herein, if, upon making application for such exemption, the applicant provides affirmative evidence that such *** not-for-profit organization is an exempt organization pursuant to paragraph (3) of Section 501(c) of the Internal Revenue Code or its successor, and either: (1) the bylaws of the *** not-for-profit organization, provide for a waiver or reduction of any entrance fee, assignment of assets or fee for services, based upon the individual's ability to pay ***. (Ill. Rev. Stat. 1987, ch. 120, par. 500.7.)

Plaintiff ignores further provisions of the amendment, that is, that the amendment does not apply to assessment years which are the subject of litigation on the effective date of the amendment, which was September 10, 1987. (Ill. Rev. Stat. 1987, ch. 120, par. 500.7.) The complaint was filed in this case on November 4, 1985. Furthermore, the amendment requires an organization to show that its bylaws contain a provision waiving fees if an individual is unable to pay, and plaintiff's bylaws do not do so.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

LINDBERG, P.J., and REINHARD, J., concur.