RESURRECTION LUTHERAN CHURCH, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (5th Division)   No. 1—89—0185

Opinion filed April 19, 1991.

---

*Justice Michel A. Coccia participated in oral argument prior to his assignment to another division.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, both of Chicago, of counsel), for appellant.

Timothy A. French, of Neal, Gerber, Eisenberg & Lurie, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Department of Revenue of Illinois (Department of Revenue), appeals from a circuit court order reversing its decision that plaintiff, Resurrection Lutheran Church (Resurrection Lutheran), was not entitled to a property tax exemption in 1986 for its property located at 1040 West Barry, Chicago, Illinois. Resurrection Lutheran had leased the property to MoMing Dance and Arts Center (MoMing). The Department of Revenue disallowed the property tax exemption for the 1986 taxable year on the grounds that the property had not been utilized for charitable purposes by MoMing and that Resurrection Lutheran had leased the property in question to MoMing for profit. The circuit court reversed the decision of the Department of Revenue and held that Resurrection Lutheran was entitled to a tax exemption for the property for the 1986 taxable year. The Illinois Department of Revenue has filed a timely appeal to the circuit court's order.

The facts of the case are as follows. Resurrection Lutheran is the owner of a parcel of property located at 1040 West Barry Street, Chicago, Illinois. The property is improved with a three-story building no longer used for religious purposes. During the calendar year 1986, Resurrection Lutheran leased the property to MoMing, an Illinois not-for-profit organization. MoMing intended to use the property and premises for a dancing school and for dancing performances and related activities. Resurrection Lutheran received $14,400 in rent from this lease during 1986.

Resurrection Lutheran chose to lease the 1040 West Barry property as opposed to selling because the church hoped to utilize this property for church purposes in the future and thus wanted the property properly maintained. Reverend Swanson stated that Resurrection Lutheran had sought to lease to non-profit organizations that would be an asset to the community. He further testified that in 1979 he had been offered $150,000 for the property by a developer. Reverend Swanson had also been told that the MoMing property could have

been leased for as much as $7 a square foot whereas MoMing's rental rate was approximately $1.11 per square foot.

MoMing was incorporated under the Illinois General Not for Profit Corporation Act. Its articles of incorporation, filed on July 1, 1974, stated that MoMing would promote educational activities by, *inter alia*: preparing and presenting works of contemporary dance by Chicago choreographers; providing a repertory contemporary dance company; conducting classes in modern dance technique and choreography; and increasing the exchange of ideas between dancers and other artists.

On September 17, 1987, Judge Conrad of the circuit court of Cook County, found, as a matter of law, that Resurrection Lutheran was exempt from property tax for the years 1978 through and including 1985 as a religious institution, pursuant to section 19.2 of the Illinois Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 500.2). Judge Conrad further found that Resurrection Lutheran had not leased its property to MoMing with a view to profit, that the lease involved only incidental income for Resurrection Lutheran for the relevant time periods and that MoMing was a charitable organization.

The Cook County assessor assessed a real estate property tax against the subject property for the calendar year 1986. Resurrection Lutheran appealed the assessment to the Board of Appeals of Cook County (Board of Appeals). In July of 1987, the Board of Appeals notified the Department of Revenue that it was denying Resurrection Lutheran the exemption for 1986. In August of 1987 the Department of Revenue notified Resurrection Lutheran that it was affirming the action of the Board of Appeals, disapproving the 1986 exemption. Subsequently, Resurrection Lutheran requested a formal hearing on the matter. Pursuant to Resurrection Lutheran's request, a hearing was held before Administrative Law Judge Nafziger in November 1987.

After hearing, Judge Nafziger recommended that the exemption sought by Resurrection Lutheran be denied for the tax year 1986. Judge Nafziger found that MoMing did not meet the requirements for charitable organizations. Specifically, Judge Nafziger found that MoMing's funds were not derived from private and public charity, that charity was not dispensed by MoMing to all who need and apply for it, that obstacles were placed in the way of those seeking the benefits, and that the primary use of the property was not for charitable purposes.

In reaching the aforestated conclusion Judge Nafziger made the following findings of fact. During 1986, there were approximately 67

nights of performances, as well as four Sunday young people's matinees. MoMing rents out its studios for $5 to $7 per hour, the auditorium stage for $10 per hour and the entire auditorium for $175 per evening, on occasions when it is not using said facilities for its own purposes. MoMing offered classes in contemporary dance for both young people and adults during all of 1986. Tuition fees of approximately $5 per session were charged for all classes. While MoMing did not waive or reduce tuition fees for classes during 1986, it did offer a work-study program, whereby students who could not afford to pay for classes were assigned jobs, usually in the nature of janitorial work, in exchange for the right to attend classes. Approximately 30 to 40 students out of a total 200 students each session participated in the work-study program. Although MoMing did not waive or reduce admission prices for performances, some tickets were given to a home for the mentally handicapped (Commodore Inn), and tickets were given away or discounted for certain performances. MoMing has a visual arts gallery where artists are invited to put up their work. There is no admission fee to the gallery; however, if any items were sold, MoMing, received 20% of the sale price, with the artist retaining 80%. Judge Nafziger further found that during the 1986 fiscal year, MoMing derived 43% of its income from tuition fees, performance admissions, concession receipts, space rentals, and commissions on art sales, while 57% of MoMing's income during that same period was derived from contributions.

On March 28, 1988, Resurrection Lutheran filed an action for injunctive relief to reverse the recommendation of Judge Nafziger on the ground that the recommendation was contrary to law and against the manifest weight of the evidence.

On December 23, 1988, Judge Alexander White entered a written order reversing the ruling of the Department of Revenue and ordering that Resurrection Lutheran be granted a property tax exemption for the subject parcel in 1986. In so ruling, the trial court expressly found that MoMing satisfied all six factors for charitable institutions set forth in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537. The trial court also held that Resurrection Lutheran did not have to prove a connection between Resurrection's purpose and the purpose for which MoMing used the property in order to retain the tax-exempt status of the property. This timely appeal followed.

■ The burden of proving the right to an exemption is upon the person seeking it. Each individual claim for tax exemption must be determined from the facts presented, and the one claiming an exemp-

tion has the burden of proving clearly and conclusively that it is entitled to exempt status. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462, 264 N.E.2d 4, 10.) In determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 494 N.E.2d 485.

■ The scope of review of an administrative agency decision is generally limited to whether the administrative decision is against the manifest weight of the evidence. (*Decatur Sports Foundation v. Department of Revenue* (1987), 156 Ill. App. 3d 623, 627, 509 N.E.2d 1103, 1105.) The findings and conclusions of the administrative agency on questions of fact are *prima facia* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) However, where the relevant facts are undisputed, the issue of whether property is exempt is a question of law. (*Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 423, 513 N.E.2d 587, 589.) Therefore, the decision as to whether property is tax-exempt "depends solely upon an application of the appropriate legal standard to the undisputed facts" (*Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315), and the reviewing court's role is to determine whether the trial court properly found that the property in question was entitled to tax-exempt status. *Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 423, 513 N.E.2d 587, 589; see also *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 311, 490 N.E.2d 161.

Section 19.7 of the Revenue Act provides a tax exemption for "[a]ll property of institutions of public charity, *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) The sole issue on appeal is whether Resurrection Lutheran should have been granted a property tax exemption for the property leased to MoMing. The Department of Revenue argues that Resurrection Lutheran failed to establish that MoMing's use of the property in question satisfied each of the criteria for charitable institutions and thus Resurrection Lutheran, the owner-lessor of the property in question, was not entitled to the property tax exemption under the language of Section 19.7 of the Revenue Act. We note, there is no dispute as to the tax-exempt status of Resurrection Lutheran. Resurrection Lutheran argues that MoMing is properly a tax-exempt institution because it satisfies the criteria for

charitable institutions; thus, we should affirm the decision of the trial court. For the following reasons, we affirm the decision of the trial court.

■■ In order to qualify for a property tax exemption on charitable grounds, the taxpayer must show that the property was owned by a charitable organization and was exclusively used for charitable purposes. (*Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 312, 490 N.E.2d 161, 163.) In *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, the Illinois Supreme Court articulated the following criteria which must be proven by the taxpayer in order to demonstrate that the use of property is in fact primarily used for charitable purposes: (1) the benefits derived are for an indefinite number of persons; (2) the organization has no capital, capital stock, or shareholders, and does not profit from the enterprise; (3) funds are derived mainly from private and public charity, and are held in trust for the objects and purposes expressed in its charter; (4) charity is dispensed to all who need and apply for it; (5) no obstacles are placed in the way of those seeking the benefits; and (6) the primary use of the property is for charitable purposes. *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d at 157, 233 N.E.2d at 541-42.

The Department of Revenue argues that the trial court erred in reversing the Department of Revenue on administrative review and ruling that the six factors of the *Methodist* test had been met. The Department of Revenue has conceded that MoMing satisfied factors one and two. Additionally, the Department is not contesting on appeal that MoMing satisfied factor three of the *Methodist's* guidelines due to the fact that 60% of MoMing's funds came from public and private charity.

First, the Department of Revenue argues that MoMing failed to meet the fourth factor outlined in Methodist: that Resurrection Lutheran failed to establish that MoMing's charity was dispensed to all who need and apply for it. The Department of Revenue points to the following evidence: MoMing charged fees for both its instructional lessons and its performance concerts; no full or partial scholarships were offered to students for lessons at MoMing; no performance tickets were made available to the general public free of charge, and free tickets were only offered to the Commodore Inn, a home for mentally handicapped individuals and in instances where it sought to fill the house.

Further, the Department of Revenue argues that the other uses of the property in question by MoMing indicate that charity was not dis-

pensed to all who need and apply for it. Local artists were invited to display their works in a visual arts gallery, but MoMing retained 20% of the cost of any item sold and MoMing rented out its facilities to the public for a fee.

Second, the Department of Revenue alleges that MoMing failed to meet the requirements of the fifth factor set out in *Methodist*: that Resurrection Lutheran did not establish that no obstacles are placed in the way of those seeking benefits. The Department of Revenue argues that the evidence reflects that both students seeking instruction at MoMing and individuals attending performances at MoMing or otherwise utilizing its facilities were required to pay for these privileges, with only limited exceptions being made by MoMing. The limited exceptions the Department of Revenue refers to are that no scholarships were offered to prospective students, the students having either to seek admission into the work-study program or to pay the full tuition fees, and that Commodore Inn was given free tickets to performances, with the general public having to pay the full admission price. The Department of Revenue argues that such financial requirements constituted significant obstacles to the general public's utilization of MoMing's services; thus, MoMing failed to meet this criterion as well.

Third, the Department of Revenue alleges that MoMing failed to meet the requirements of the sixth factor set out in *Methodist*: that Resurrection Lutheran failed to establish that the exclusive (primary) use of the property was for charitable purposes. The Department of Revenue argues that while MoMing's goals of providing a repertory contemporary dance company, instructing students in contemporary dance, and presenting performances for public enjoyment may be desirable, they hardly relieve a governmental burden.

■■ ■ The record reflects that, during 1986, tuition for classes at MoMing was approximately $5 per session for students able to pay and a work-study program was provided for those students who could not pay. MoMing also rents out its studios, stage and auditorium when they were not in use; however, the rental rates in 1986 were as follows: $5 to $7 per hour for studio time, $10 per hour for the stage and $175 per evening for the entire auditorium. MoMing offered a period on Friday afternoon called a "free jam" when outside persons were invited to utilize the MoMing dance studio to "move freely with no restrictions." A charitable institution does not lose its tax-exempt status merely because persons who are unable to pay for its services are required to do so, as long as the institution makes no profit and all the funds are used to further the organization's charitable goals. (*Small v. Pangle* (1975), 60 Ill. 2d 510, 328 N.E.2d 285; *People ex rel.*

*Nordlund v. The Association of The Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 273 N.E.2d 533.) The amounts charged by Mo-Ming for tuition and admission fees to dance concerts were substantially less than enough to cover regular operating expenses. MoMing's director testified that each performance event incurred a loss of approximately $1,000 to $8,000. Additionally, MoMing uses it excess receipts, if any, to offset deficits in other years and not to reap a profit.

Although MoMing does not charge artists to exhibit artwork, the Department of Revenue points out that MoMing retained 20% of the sale price of any artwork sold from its visual gallery. However, relevant to this point, MoMing's director testified to the following:

"BY ADMINISTRATIVE LAW JUDGE: Q. Looking through the Applicant's Exhibit No. 6, it appears that there were not a great many paintings sold or other art objects sold?

A. [MoMing's director] No. Generally there is not. It's not a common occurrence.

Q. So the gallery is then truly primarily for display and not for sale?

A. Yes."

The director further testified that she only recalled one or two paintings having been sold during 1986.

■ Property satisfies the exclusive use requirement of the property tax exemption statutes if it is primarily used for the exempted purpose, even though it is also used for a secondary or incidental purpose. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 98, 456 N.E.2d 73.) The determination of whether the primary use of property is a charitable purpose depends on the facts of each individual case. (*School of Domestic Arts & Science v. Carr* (1926), 322 Ill. 562, 568, 153 N.E. 669, 671.) The test is "whether the primary purpose of the institution is charitable, or whether its primary purpose is the making of a profit and the devoting of these profits to charitable purposes." (*People v. YMCA* (1936), 365 Ill. 118, 123, 6 N.E. 166, 169.) In the trial court's memorandum decision and judgment, the trial judge expressly determined that MoMing's stated goals and mission, providing an accessible forum for the performing arts to artists and the public in the Chicago area, are clearly charitable.

Similarly, the court in *Highland Park Women's Club v. Department of Revenue* (1990), 206 Ill. App. 3d 447, 564 N.E.2d 890, held that the property at issue (Ravinia Park) was a charitable organization engaged in the promotion of the arts, including music, dance, and theater, by putting on performances at the park and making performances readily available to the public through low admission prices and

the Opportunity Program. Fostering appreciation of the arts through the performances on the premises was the primary purpose of that parcel of land.

█ MoMing's director testified that MoMing fully sponsored "student showcases," underwrote regular performances, offered as many as 44 complimentary tickets out of a total 140 for dance concerts, actively participated in Chicago's Urban Gateways program, and offered its benefits to 13,000 to 15,000 persons every year. We find that Resurrection Lutheran established that MoMing's use of the property in question satisfied each of the criteria of the test set forth in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, to demonstrate that the property in question was used primarily for charitable purposes. As a result Resurrection Lutheran, the owner-lessor of the property in question, was entitled to a property tax exemption under the language of section 19.7 of the Revenue Act for the 1986 tax year.

Accordingly, for the reasons set forth above, we affirm the decision of the trial court granting Resurrection Lutheran a tax exemption for the property located at 1040 West Barry, Chicago, Illinois, for the tax year 1986.

Judgment affirmed.

LORENZ, P.J., and McNULTY, J., concur.