THIRD DIVISION

AUGUST 09, 2000

No. 1-00-0237

RANDOLPH STREET GALLERY, )  APPEAL FROM THE

)  CIRCUIT COURT OF

Plaintiff-Appellee, )  COOK COUNTY.

)

v. )

)

KENNETH E. ZEHNDER, Director,   )

ILLINOIS DEPARTMENT OF REVENUE, and )

ILLINOIS DEPARTMENT OF REVENUE, )

)  98 L 50550

    Defendants-Appellants, )

)

and )

 )

HONORABLE WILSON FROST and JOSEPH )

BERRIOS, Commissioners, COOK COUNTY )

BOARD OF APPEALS, and COOK COUNTY )

BOARD OF APPEALS, )  HONORABLE

)  THOMAS P. QUINN,

Defendants. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

In 1994 and 1995 Randolph Street Gallery (RSG), a non-profit corporation, served as a public forum for the contemporary arts and for art education activities.  All well and good, said the Illinois Department of Revenue (the Department), but RSG is not entitled to real estate charitable tax exemptions for those years.  On administrative review, the circuit court held the Department should have granted the exemptions.  The Department appealed.  We affirm the circuit court.

FACTS

In 1993, RSG
 acquired 
two adjacent three-story buildings on North Milwaukee Avenue in Chicago's West Town neighborhood.  RSG occupied the first floors of these buildings, and this space was divided into four areas: three areas for exhibitions, performances, classes or workshops, and one area called a resource room containing around 1,700 books, magazines, and videotapes, as well as a computer with internet access, which was open to the public.  RSG generally charged no admission fees to exhibitions, but regularly charged fees to "Time Arts" events or performances.  In 1994 and 1995, RSG presented eight exhibitions and more than 50 performances.  RSG also presented free lectures and artist workshops for which it charged fees.  Several local universities, including the School of the Art Institute of Chicago, Northwestern University, and Columbia College, placed interns at RSG.

RSG also created and managed Team Arts Pursuits (TAP), a community arts education program which integrated resources from a variety of social service agencies to offer workshops for at-

risk youths and adults.  And RSG allowed other local arts organizations, such as Women in the Director's Chair, Street Level Video, the Women's Action Coalition, the Gay and Lesbian Cultural Workers, the Chicago Public Art Group, and the Chicago Committee of the Day Without Art to use its space for programming and meetings.

On October 19, 1994, RSG filed an "Application for Property Tax Exemption" to avoid paying $164,719 in 1994 property taxes.  On February 1, 1996, the Department denied RSG's application, stating, "THE PROPERTY IS NOT IN EXEMPT OWNERSHIP.  THE PROPERTY IS NOT IN EXEMPT USE."  On March 21, 1996, RSG filed another "Application for Property Tax Exemption" to avoid paying $77,664 in 1995 property taxes.  Again, on September 5, 1997, the Department denied RSG's application, repeating, "THE PROPERTY IS NOT IN EXEMPT OWNERSHIP.  THE PROPERTY IS NOT IN EXEMPT USE."

RSG requested a formal hearing regarding these denials.  The Department, at a hearing before an administrative law judge (ALJ), submitted seven exhibits, including RSG's exemption applications, the Department's denials, RSG's hearing requests, and the ALJ's order consolidating RSG's cases and scheduling a hearing.  RSG submitted nine exhibits concerning its activities and finances, called 11 witnesses at the hearing, and submitted a post-hearing brief.  On May 4, 1998, the ALJ issued his "RECOMMENDATION FOR DISPOSITION," in which he recommended the Department affirm its earlier denials of RSG's exemption applications.  On May 5, the Department accepted the ALJ's recommendation, and, on June 9, RSG filed an administrative review complaint in the circuit court.

On December 8, 1999, the trial court reversed the Department's decision.

DECISION

This appeal marks the Department's first meaningful participation in this case.  The Department did not appear at the hearing before the ALJ.  On administrative review before the trial court, the Department never responded to RSG's opening brief.

After the Department's attorney advised he would not file a timely response brief, RSG filed a so-called "REPLY BRIEF."  According to RSG, the Department's attorney telephoned RSG's attorney to ask for a month-long briefing extension.  RSG's attorney balked, and the parties agreed to discuss the case in a subsequent telephone conversation.  When they spoke several days later, the Department's attorney said he would prepare an internal brief supporting his recommendation of concession.

There was no concession.  Instead, there was a hearing on RSG's complaint.  The Department focused its argument on whether RSG failed to show its expenses were related to charitable purposes.  It relied entirely on RSG's purported failure to provide "*** any information as to how the monies were actually spent, any type of breakdown was not provided."

The trial judge's adverse ruling apparently piqued the Department's interest, and now, on appeal, it has abandoned the charitable-expenses issue it relied on in the circuit court.  Instead, the Department contends RSG was not a charity because it charged substantial fees for services it offered and did not waive those fees for those who were unwilling to pay.  The uncontradicted fact that RSG had a fee-waiver policy in place and used it does not deter the Department.  That policy was ineffective, says the Department, because RSG did not make it known to the public.

The Department also now contends RSG was not entitled to a tax exemption because the primary purpose for which the property was used was not charitable.  While this second contention is difficult to follow, it seems to be a restatement of the Department's first claim: RSG charged fees for some of its performances and did not publicly announce a fee-waiver policy.

The issues the Department raises before us were not raised in the circuit court.  We could hold the Department has forfeited our review of these issues.  
People ex rel. Hartigan v. Illinois Commerce Comm'n
, 117 Ill. 2d 120, 131, 510 N.E.2d 865 (1987); see 
St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals of the City of Chicago
, 100 Ill. App. 2d 302, 313, 241 N.E.2d 525 (1968)("This court will consider only such questions as were raised and preserved in the trial court, and this principle likewise applies to review of an administrative determination.")  Because the parties contest significant tax liability, we will consider the merits of the Department's appeal.  

While "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3-110 (West 1998)), a reviewing court may revisit the agency's conclusions of law 
de
 
novo
 (
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995)).  But our Supreme Court has told us the issues in this case cannot be characterized neatly as either 
questions of fact or questions of law, but, more appropriately, as "mixed question[s] of fact and law."  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998).  That is, "[w]here a case involves the examination of the legal effect of a given set of facts, the agency's determination should be affirmed unless clearly erroneous."  
XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293 (1999).

"Clearly erroneous" is said to rest somewhere between the "manifest weight of the evidence" and 
de
 
novo
, requiring us to afford some deference to the agency's experience and expertise.  
City of Belvidere
, 181 Ill. 2d at 205; 
Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue
, No. 1-98-4459, slip op. at 7 (May 17, 2000).  Under this standard, we must accept the administrative agency's findings unless we are firmly convinced the agency has made a mistake.  
Friends of Israel Defense Forces v. Department of Revenue
, No. 1-

98-4362, slip op. at 7 (June 30, 2000)(citing 
Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust
, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64, 113 S. Ct. 2264, 2279 (1993)).  We are firmly convinced.

Under the Illinois Constitution the General Assembly may exempt from taxation property used exclusively for "school, religious, cemetery and charitable purposes."  Ill. Const. 1970, art. IX, §6.  Section 15-65 of the Tax Code provides "institutions of public charity" are exempt from property taxes when their property is "*** actually and exclusively used for charitable and beneficent purposes, and not leased or otherwise used with a view to profit ***."  35 ILCS 200/15-65 (West 1998).

We construe tax exemption statutes strictly in favor of taxation, and the taxpayer seeking an exemption must prove by clear and convincing evidence the exemption applies.  
Midwest Physicians Group, Ltd. v. Department of Revenue
, 304 Ill. App. 3d 939, 952, 711 N.E.2d 381 (1999).

Charitable ownership and charitable use together entitle a parcel to exemption.  
Institute of Gas Technology v. Department of Revenue
, 289 Ill. App. 3d 779, 783, 683 N.E.2d 484 (1997).  Our Supreme Court provided guidance on what constitutes charitable property use in 
Methodist Old Peoples Home v. Korzen
, 39 Ill. 2d 149, 156-57, 233 N.E.2d 537 (1968).

The 
Korzen
 "guidelines and criteria" 
have evolved into six characteristics of a charitable organization: (1) the organization benefits an indefinite number of people; (2) the organization has no capital, capital stock, or shareholders earning profits or dividends; (3) the organization derives its funds primarily through private and public donation and expends these funds for the purposes expressed in its charter; (4) the organization dispenses its benefits to all people who need and apply for them; (5) the organization places no obstacles in the way of those seeking its benefits; and (6) the organization uses its property primarily for charitable purposes.  See 
Highland Park Women's Club v. Department of Revenue
, 206 Ill. App. 3d 447, 463-64, 564 N.E.2d 890 (1990).  Additionally, the organization's activities should ease the burdens of the government.
  
Highland Park Women's Club
, 206 Ill. App. 3d at 464.

These characteristics do not demand rigid application.  Instead, "*** courts consider and balance the guidelines by examining the facts of each case and focusing on whether and how the institution serves the public and lessens the State burden."  
DuPage County Board of Revenue v. Joint Comm'n on Accreditation of Healthcare Organizations
, 274 Ill. App. 3d 461, 469, 654 N.E.2d 240 (1995).

Here, the Department does not argue all the 
Korzen
 characteristics weigh in favor of taxation.  It does not deny RSG is a non-profit organization, without capital stock or shareholders.  Instead, the Department contends RSG has failed to uphold its burden on the final two factors.  

First, and primarily, the Department contends RSG placed obstacles in the way of those seeking its benefits because it did not advertise or publish its fee-waiver policy.

In 
Resurrection Lutheran Church v. Department of Revenue
, 212 Ill. App. 3d 964, 571 N.E.2d 989 (1991), a Chicago church sought a tax exemption for property it rented to a contemporary dance non-profit organization.  The organization charged admission to performances on the property and offered no fee waiver.  But the organization donated some tickets to a local facility for mentally handicapped people, and gave away or discounted tickets for certain performances.  The organization also rented studio space and conducted classes on the property.  The organization offered no fee waiver for these classes, but did offer a work-study program.  The Department rejected the church's exemption application.

On appeal, we held the organization did not place obstacles in the way of those seeking its benefits.  We said: "A charitable institution does not lose its tax-exempt status merely because persons who are unable to pay for its services are required to do so, as long as the institution makes no profit and all the funds are used to further the organization's charitable goals."  
Resurrection Lutheran Church
, 212 Ill. App. 3d at 971.  Notably,  the organization's admission fees were substantially less than its operating expenses.  
Resurrection Lutheran Church
, 212 Ill. App. 3d at 972.  See
 
Lutheran General Health Care System v. Department of Revenue
, 231 Ill. App. 3d 652, 664, 595 N.E.2d 1214 (1992); 
Highland Park Women's Club
, 206 Ill. App. 3d at 464-65; see also 
Small v. Pangle
, 60 Ill. 2d 510, 517, 328 N.E.2d 285 (1975)(charging a minimal fee does not necessarily remove the categorization of a charitable institution).

In 
DuPage Art League v. Department of Revenue
, 177 Ill. App. 3d 895, 532 N.E.2d 1116 (1998), relied on by the Department, a visual arts organization sought a tax exemption for property it used as an art gallery.  The organization had 513 members who paid annual dues and offered no fee waiver.  While the organization charged no admission to the gallery, only members could exhibit art.  The organization received 20% of the sale proceeds from the gallery.  The organization also conducted free demonstrations and paid classes on the property.  The Department rejected the organization's exemption application.

On appeal, the court held the organization placed obstacles in the way of those seeking its benefits.  
DuPage Art League
, 177 Ill. App. 3d at 900.  The court observed only one of the organization's 513 members was not required to pay dues and its membership application did not mention a fee waiver.  
DuPage Art League
, 177 Ill. App. 3d at 900.  See
 
Highland Park Hospital v. Department of Revenue
, 155 Ill. App. 3d 272, 280-81, 507 N.E.2d 1331 (1987).

Like the trial court here, we find 
Resurrection Lutheran Church
 more persuasive than 
DuPage Art League
.  Unlike the organization in 
DuPage Art League
, RSG did not serve primarily as its members' exhibition space and sales agent.  It did not exist solely for the benefit of its members.  It served an indefinite number of people.

And like the organization in 
Resurrection Lutheran Church
, RSG's admission-fee income was negligible--"a limited amount of additional revenue," according to the Department--compared to both its entire revenues and its expenses.  Most of RSG's revenue came from grants and contributions--of cash and materials.  In 1994, RSG's income totaled $657,143, and its expenses totaled $485,521.  RSG's 1994 income from program admissions was $16,870, 2.57% of its total income and 3.47% of its total expenses.  In 1995, RSG's income totaled $477,665, and its expenses totaled $543,986.  RSG's 1995 income from program admissions was $16,556, 3.47% of its total income and only 3.04% of its total expenses.  See 
Vermillion County Museum Society v. Department of Revenue
, 273 Ill. App. 3d 675, 679, 653 N.E.2d 416 (1995)(an historical organization was still a charity where its small admission fees constituted an insignificant amount of its operating costs). 

Unlike the organization in 
Resurrection Lutheran Church
, RSG had an undisputed and consistent fee-waiver program.  Peter Taub (Taub), RSG's executive director in 1994 and 1995, testified at the administrative hearing.  Taub said the RSG property was open to the public: "Admission is completely free, and in fact in many instances, the staff or volunteers of the Gallery provided voluntary assistance to visitors."  But, Taub noted:

"There are some programs that we charge admission in order to offset expenses.  These programs are principally performances, and the admission fee scale that we adopted has two guiding principles.  One is to keep the price scale as low as possible, and secondly to have a pay-as-you-can policy for those people who are for whatever reason unable or unwilling to meet that requested pay scale."

The "pay-as-you-can" policy meant RSG would accept any portion of the admission fee.  And, according to Taub, if attendees refused to pay, "Then they're admitted.  I mean I think it's the kind of attitude that if somebody's unwilling to pay or unable to pay one time, if they have a positive experience next time, they'll be coming back.  And they'll be coming with acquaintances or friends or will find some other way of remunerating the organization."  Taub's testimony was uncontradicted.  RSG also granted free admission to students at the Chicago Academy of the Arts High School.

The ALJ found RSG consistently "*** adhered to a 'pay as you go policy' during the years in question.  Under this policy, those who could not pay full admission fees were allowed to attend performing arts events if they paid whatever they could afford."  The judge added, however, RSG's policy was not mentioned in its by-laws or in the pamphlets describing its events.  But RSG amended its by-laws on March 20, 1996, to provide:

"As to any event sponsored by Randolph Street Gallery for which it is determined that a fee must be charged, consistent with longstanding policy, Randolph Street Gallery will continue to reduce or waive any said fee based upon a participant's ability to pay.  In no event shall a person be excluded from participation in a Randolph Street Gallery event due to that person's inability to pay any such fee."

Cf.
 
Wyndemere Retirement Community v. Department of Revenue
, 274 Ill. App. 3d 455, 460, 654 N.E.2d 608 (1995)("the 
Korzen
 factor that charity be dispensed 'to all who need it' is not limited to the past but also requires an assessment of future policy.")

We have found no Illinois decision that holds public notice of a fee-waiver policy is an indispensable fact for a charitable tax exemption.  Contrary to the Department's contention, our refusal to find a charitable exemption in 
Alivio Medical Center v. Department of Revenue
, 299 Ill. App. 3d 647, 702 N.E.2d 189 (1998), did not rest on the medical center's failure to advertise its willingness to waive fees.  There, the medical center relied almost entirely on fees paid by its clients.  It did not waive any of those fees for people unwilling to pay.  In addition, it made a substantial net profit.  True, it wrote off bad debt, but that, we held, was not charity.

Because RSG's admission-fee income was substantially less than its operating expenses, and because RSG had a consistent fee-waiver policy, we conclude RSG's failure to advertise its pay-as-you-can policy does not add up to an obstacle placed in the way of those seeking benefits.
  We believe the 
Korzen
 guidelines were satisfied in this case.

Second, bootstrapping onto its fee-waiver argument, the Department contends RSG did not use its property primarily for charitable purposes because it charged admission to some of its programs but did not advertise or publish its fee-waiver policy.  Having decided the Department's fee-waiver argument is unconvincing, we conclude its related charitable-use argument fails as well.

We agree with RSG's central contention: practically and symbolically integrating contemporary art and art education into the spectrum of community activities in a diverse and rebuilding neighborhood is charity.

"'A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens [burdens] of government.'" 
Crerar v. Williams
, 145 Ill. 625, 643, 34 N.E. 467 (1893)(quoting 
Jackson v. Phillips
, 96 Mass. 539, 556 (1867)).

The Illinois Administrative Code, which governs the Department, embraces this broad concept of charity: "*** a charitable purpose may refer to almost anything which promotes the well-being of society."  86 Ill. Adm. Code §130.2005(i)(2) (1996); see 
Friends of Israel
, No. 1-98-4362, slip op. at 9-10; see also 
Decatur Sports Foundation v. Department of Revenue
, 177 Ill. App. 3d 696, 706-07, 532 N.E.2d 576 (1988)(collecting cases nationwide which similarly interpret the concept of charity).  RSG's activities clearly fall within these expansive definitions.

CONCLUSION

The Department's decision to deny RSG's exemption applications was clearly erroneous.  We affirm the decision of the trial court.

Affirmed.

CAHILL, P.J., and CERDA, J., concur.